UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THERESA M. C.,[1]

                          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

**DECISION AND ORDER**

1:21-cv-01005 (JJM)

 

      This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to disability insurance ("DIB") or supplemental security income ("SSI") benefits.  Before the court are the parties' cross-motions for judgment on the pleadings [7, 9].[2]  The parties have consented to my jurisdiction [11].  Having reviewed the parties' submissions [7, 9, 10], the Commissioner's motion is granted, and plaintiff's motion is denied.

**BACKGROUND**

      The parties' familiarity with the 1,283-page administrative record [6] is presumed.  Further, the parties have comprehensively set forth in their papers the plaintiff's treatment history

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries.  Page references to the administrative record are to the Bates numbering.  All other page references are to the CM/ECF pagination.

and the relevant medical evidence. Accordingly, I refer below only to those facts necessary to explain my decision.

In October 2014, plaintiff filed applications for DIB and SSI, alleging a disability beginning October 20, 2014 due to a neurological disorder, severe migraines, back problems, asthma, depression, anxiety, attention deficit hyperactivity disorder, ovarian cysts, and kidney problems. Administrative Record [6] at 16, 191. This matter was previously remanded from this court. Id. at 844-45. The Appeals Council ("AC") noted a "discrepancy between the residual functional capacity assessment" ("RFC") and the findings of Janine Ippolito, Psy.D., to which the prior ALJ assigned "great weight". Id. at 850. Upon remand, the AC ordered the ALJ to, *inter alia*[3]: "[g]ive further consideration to the claimant's maximum [RFC] [("RFC")] during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations", and "explain the weight given to such opinion evidence". Id. at 851-52. In addition, the ALJ was ordered to obtain supplemental evidence from a vocational expert, if necessary. Id. at 852.

ALJ Gregory Moldafsky held a hearing on July 31, 2020, at which plaintiff, who appeared with an attorney, and a vocational expert testified. *See* id. at 767-804 (transcript of hearing). The vocational expert, Dian Haller, testified that an individual with plaintiff's RFC could perform the light work, unskilled jobs of housekeeper, garment bagger, and assembler of hospital products. Id. at 797-98. In addition, an individual restricted to sedentary work, but with the other limitations in the RFC, could perform the jobs of final assembler, screener inspector of circuit boards, and polisher. Id. at 798-99. Finally, she testified that an employee being off-task

---

[3]    The plaintiff's arguments focus upon the ALJ's treatment of the opinion evidence in relation to the RFC. I therefore include here only the instructions from the AC that are related to that issue.

as little as 5% of the time within a workday would preclude all work, as would two or more absences per month.  Id. at 799-800.

Based upon the medical evidence and testimony, ALJ Moldafsky found that plaintiff's severe impairments were "Arnold-Chiari malformation type 1, low back pain, cervicalgia, migraine headaches, history of traumatic brain injury, asthma/COPD, attention-deficit hyperactivity disorder, unspecified psychosis, major depressive disorder, bipolar disorder, generalized anxiety disorder, posttraumatic stress disorder, history of cannabis, and cocaine alcohol abuse in remission".  Id. at 748.  He considered the four broad categories of "Paragraph B" mental functioning and determined that plaintiff had mild limitations in the category of understanding, remembering, or applying information; and no more than a moderate limitation in the functional categories of interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing oneself.  He noted, however, that but there was "no significant evidence that [plaintiff] is not able to regulate her emotions, control her behavior, and maintain well-being in a work setting".  Id. at 749.

In order to determine plaintiff's RFC, ALJ Moldafsky considered functional assessments from several sources, only three of which are at issue on this appeal: consultative examiner Janine Ippolito, Psy.D.; treating Nurse Practitioner Marlene Longdon; and consultative examiner Nikita Dave, M.D.  See id. at 757-58; see also Plaintiff's Memorandum of Law [7-1] at 22-28.

Dr. Ippolito conducted a psychiatric evaluation, including a mental status examination.  Id. at 727-32, 738-40.  She also considered plaintiff's functional abilities, opining that plaintiff had:

1) no limitations with respect to understanding, remembering or applying simple directions and instructions; sustaining an ordinary routine and regular attendance at work; maintaining personal hygiene and appropriate attire; and being aware of, and avoiding, normal hazards;

2) mild limitations understanding, remembering, and applying complex directions and instructions;

3) moderate limitations using reason and judgment to make work-related decisions; interacting adequately with supervisors, co-workers and the public; and sustaining concentration and performing a task at a consistent pace; and

4) marked limitations regulating emotions, controlling behavior, and maintaining her well-being.

Id. at 730-31.  Dr. Ippolito stated in conclusion, "The results of the present evaluation appear to be consistent with psychiatric problems and this may significantly interfere with the claimant's ability to function on a daily basis."  Id. at 731.

NP Longdon completed a Mental Residual Functional Capacity Questionnaire form on September 21, 2017.  With respect to the "mental abilities and aptitudes needed to do unskilled work", NP Longdon checked boxes indicating that plaintiff had "no useful ability to function" for four categories, was "unable to meet competitive standards" in six categories, and was "seriously limited" in five others:

| I. | MENTAL ABILITIES AND APTITUDES NEEDED TO DO UNSKILLED WORK | Unlimited or Very Good | Limited but satisfactory | Seriously limited | Unable to meet competitive standards | No useful ability to function |
|---|---|---|---|---|---|---|
| A. | Remember work-like procedures | | | X | | |
| B. | Understand and remember very short and simple instructions | | X | | | |
| C. | Carry out very short and simple instructions | | | X | | |
| D. | Maintain attention for two hour segment | | | X | | |
| E. | Maintain regular attendance and be punctual within customary, usually strict tolerances | | | | | X |
| F. | Sustain an ordinary routine without special supervision | | | | X | |
| G. | Work in coordination with or proximity to others without being unduly distracted | | | | | X |
| H. | Make simple work-related decisions | | | | X | |
| I. | Complete a normal workday and workweek without interruptions from psychologically based symptoms | | | | | X |
| J. | Perform at a consistent pace without an unreasonable number and length of rest periods | | | | | X |
| K. | Ask simple questions or request assistance | | | X | | |
| L. | Accept instructions and respond appropriately to criticism from supervisors | | | | X | |
| M. | Get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes | | | | X | |
| N. | Respond appropriately to changes in a routine work setting | | | | X | |
| O. | Deal with normal work stress | | | | X → | |
| P. | Be aware of normal hazards and take appropriate precautions | | | X | | |

NP Longdon explained that "panic attacks, hallucinations, and [problems] with concentration prevent client from completing regular workday, working with others for extended times and working at a consistent pace."  Id. at 468.  NP Longdon also checked boxes indicating plaintiff was "seriously limited" in her ability to interact appropriately with the general public and maintain socially appropriate behavior.  Id. at 469.  She explained that plaintiff has "anxiety and aggression in relationships - client has been arrested for assault".  Id. at 469.

Dr. Dave physically examined plaintiff on December 15, 2017.  She concluded that, with respect to the Arnold Chiari malformation, "there may be moderate limitations for lifting, carrying, pushing, and pulling of heavy objects.  She may benefit from seated positions with head and neck rest as needed such as a high-backed chair."  Id. at 718.  Dr. Dave also completed a check-box form entitled Medical Source Statement of Ability to do Work-Related Activities (Physical).  Id. at 720-25.  On the form, Dr. Dave checked boxes indicating that

plaintiff was able to sit for four hours at a time and for a total of eight hours during an eight-hour

work day; and could stand and sit for two hours at a time for each activity and for up to four hours

each during an eight-hour work day.  Id. at 721.

Based upon these opinions and other evidence in the file, ALJ Moldafsky

concluded that plaintiff had the RFC to perform "light work" with the following additional

limitations:

> "[E]xcept can only occasionally climb ramps and stairs; never climb
> ladders, ropes, and scaffolds; occasionally stoop, balance, kneel,
> and crouch; never crawl; never work at unprotected heights, with
> dangerous moving machinery or operating a commercial vehicle;
> and no more than occasional exposure to fumes, odors or other
> pulmonary irritants.  In addition, she is limited to simple . . .
> routine, tasks in a work environment that is not fast paced or has
> strict production quotas (e.g., work that is goal based or measured
> by end result).  Additionally, she is limited to no more than
> incidental interaction with the general public and no more than
> occasional interaction with co-workers and supervisors, in a job
> where changes in work setting or processes are few if any and any
> changes are explained in advance."

Id. at 750.

He found Dr. Ippolito's opinion "persuasive insofar as it is suggested that the

claimant has as much as moderate limitations due to her mental health symptoms".  Id. at 757.  He

explained his reasoning:

> "This is consistent with medical records as a whole as well as the
> mental status examination findings showing poor insight and
> judgment and poor fund of knowledge at times, but intact
> reasoning, memory skills, and attention and concentration. . . .
> Further, it is supported by the type and degree of treatment needed,
> including psychotherapy and prescribed medication, including
> Seroquel, Clonazepam, and paroxetine."

Id. at 757-58 (citing id. at 475-79 (exhibit 10F, pp. 5-9), and 1107-27 (exhibit 19F).

However, he found her opinion "unpersuasive insofar as Dr. Ippolito concluded that the claimant has as much as marked limitation regulating her emotions, controlling her behavior, and maintaining well-being". Id. at 757-58. Again, he explained his reasoning:

> "This potion of Dr. Ippolito's report seems to understate the claimant's functional capacity and is out of proportion to the medical records as a whole as well as the claimant's own description of her activities, including living independently, performing household activities, attending appointments, simple food preparation, watching television and movies, researching and studying, and spending time with her children. . . . Further, it is unsupported by Dr. Ippolito's own examination findings showing an adequate manner of relating, adequate social skills, and adequate overall presentation with full ranging affect, and fair insight and judgment with some deficits in attention and concentration due to difficulty with math skills and impaired memory skills due to some distractibility at the consultative examination".

Id. at 758 (citing id. at 200-223 (exhibits 5E and 6E (plaintiff's function reports)), and 714-41 (exhibits 16F and 17F) (reports of Drs. Ippolito and Dave)).

ALJ Moldafsky found the opinion of NP Longdon "unpersuasive insofar as it suggested that the claimant has more than moderate limitations due to her mental health symptoms and is unable to meet competitive standards with no useful ability to function." Id. at 758. He explained:

> "This [opinion] likewise seems to understate the claimant's functional capacity and is out of proportion to the medical records as a whole, including mental status examination findings and the claimant's own description of her activities, including living independently [and] self-sufficiency in activities of daily living. Further, it is unsupported by Ms. London's own treatment notes showing good attention and fair memory skills, insight and judgment."

Id. (citing id. at 313 (exhibit 3F at 36 (9/13/2016 treatment note)), 322 (exhibit 3F at 45

(2/21/2017 treatment note)), 324 (exhibit 3F at 47 (3/21/2017 treatment note)), 326 (exhibit 3F at

49 (5/16/2017 treatment note)), and 328 (exhibit 3F at 51 (6/20/2017 treatment note)).

   The ALJ found Dr. Dave's opinion persuasive.  He noted each of Dr. Dave's

functional findings and noted her suggestion that the plaintiff "may benefit from a seated position

with a head and neck rest such as high-backed chair as needed".  Id. at 757.  ALJ Modalfsky

reasoned that Dr. Dave's opinion is "generally consistent with the totality of the evidence,

including the type and degree of treatment and the physical examination findings showing

tenderness, but no significant deficits in gait, motor strength, reflexes or sensation. . . . Further, it

is supported by Dr. Dave's own examination findings showing no deficits in gait, motor strength,

range of motion, reflexes or sensation".  Id.

   Based upon his analysis of the evidence, his findings concerning plaintiff's RFC,

and the vocational expert's testimony, ALJ Moldafsky determined that plaintiff was able to

perform jobs that exist in significant numbers in the national economy, and therefore was not

disabled, as defined in the Social Security Act.  Id. at 760.  Thereafter, this action ensued.

   Plaintiff argues that ALJ Moldafsky improperly rejected the marked limitations in

Dr. Ippolito's opinion without adequate analysis or explanation, despite finding her opinion

persuasive.  Plaintiff's Memorandum of Law [7-1] at 23.  More specifically, plaintiff argues that

the ALJ ignored Dr. Ippolito's statement that plaintiff's psychiatric problems "may significantly

interfere with [her] ability to function on a daily basis", and that this failure was contrary to the

AC's instructions to resolve the discrepancy between the RFC and Dr. Ippolito's findings.  Id. at

24.  She argues further that his rejection of the marked limitations in the functional area of

regulating emotions, controlling behavior, and maintaining well-being amounted to "really

rejecting any limitations in the area at all". Id. at 25.  She argues ALJ Moldafsky should have incorporated an off-task limitation into the RFC to account for limitations in this functional area. Id.  In addition, she argues that the RFC does not adequately account for the moderate limitations purportedly accepted by the ALJ in the functional area of concentration, persistence, and pace. Id. at 26.

With respect to NP Longdon's opinion, plaintiff argues that ALJ Moldafsky mischaracterized NP Longdon's treatment notes, ignored the abnormal findings contained therein, and ignored the consistency of those notes with the marked limitations found by Dr. Ippolito.  Id. at 26-28.  Finally, plaintiff argues that the ALJ failed to incorporate into the RFC Dr. Dave's opinion that plaintiff could stand and walk for only two hours each at a time, despite finding his opinion persuasive.  Id. at 29.  She argues further that it was error to reject Dr. Dave's recommendation that plaintiff may benefit from "seated positions with head and neck rest as needed such as a high-backed chair".  Id.

In response, the Commissioner argues that ALJ Moldafsky properly analyzed the evidence of record, and that his determination was supported by substantial evidence. Commissioner's Brief [9-1] at 7-25.  More specifically, the Commissioner argues that the ALJ accurately characterized and cited the medical evidence, including NP Longdon's treatment notes (id. at 8-10, 17-22)), and included limitations in the RFC to account for all the limitations reasonably supported by the medical evidence (id. at 11-21).

For the following reasons, I agree with the Commissioner.

## DISCUSSION

**A.      Standard of Review**

              "A district court may set aside the Commissioner's determination that a claimant is

not disabled only if the factual findings are not supported by 'substantial evidence' or if the

decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42

U.S.C. §405(g).  Substantial evidence is that which a "reasonable mind might accept as adequate

to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197,

229 (1938.  ).   "[U]nder the substantial evidence standard of review, it is not enough for Plaintiff

to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the

record could support her position.  Plaintiff must show that no reasonable factfinder could have

reached the ALJ's conclusions based on the evidence in the record". Cheatham v. Commissioner,

2018 WL 5809937, *9 (W.D.N.Y. 2018); *see also* Brault v. Commissioner, 683 F.3d 442, 448 (2d

Cir. 2012) ("the substantial evidence standard means once an ALJ finds facts, we can reject those

facts only if a reasonable factfinder would *have to conclude otherwise*") (emphasis in original).

              An adjudicator determining a claim for Social Security benefits employs a five-

step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff

bears the burden with respect to steps one through four, while the Commissioner has the burden at

step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

              The RFC need "not perfectly correspond with any of the opinions of medical

sources cited in his decision" and an ALJ is "entitled to weigh all of the evidence available to

make an RFC finding that [is] consistent with the record as a whole".  Matta v. Astrue, 508 Fed.

Appx. 53, 56 (2d Cir. 2013) (Summary Order). *See also* Young v. Berryhill, 2018 WL 2752443,

*2 (W.D.N.Y. 2018) ("[i]t is well settled that an ALJ need not adopt one or more medical

opinions verbatim in order to render a sufficiently-supported RFC determination").  It is "well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. . . . The opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record."  Maleski v. Commissioner, 2020 WL 210064, *4 (W.D.N.Y. 2020); see also Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir. 2016) ("[t]he ALJ was permitted to consider [treating] Dr. Dawood's treatment notes in weighing the opinions of Dr. Dawood and [consulting psychologist] Dr. Kamin; and she was permitted to conclude that Dr. Kamin's opinion was more reliable").

**B.**     **ALJ Moldafsky's RFC is Supported by Substantial Evidence**

It is the ALJ's responsibility to "weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole".  Matta v. Astrue, 508 F. App'x at 56. In doing so, an ALJ may not "arbitrarily substitute [his/her] own judgment for competent medical opinion."  Riccobono v. Saul, 796 F. App'x 49, 50 (2d Cir. 2020) (Summary Order).

However, "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as [the conclusion] is supported by substantial evidence."  Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022).  Although ALJ Moldafsky's analysis might have been stated with more clarity, his decision, read as a whole, satisfies his obligation "to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached".  Lopez obo Y.T. v. Commissioner of Social Security, 2020 WL 4504987, *2 (W.D.N.Y. 2020) (internal quotation omitted).  He neither mischaracterized nor cherry-picked the record to support his conclusions.  Therefore, I find that his conclusions concerning plaintiff's RFC are supported

by substantial evidence. That is, a "reasonable mind might accept" ALJ Moldafsky's reasoning "as adequate to support his conclusion". <u>Consolidated Edison Co.</u>, 305 U.S. at 229.   The substantial evidence standard means that, "once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*". <u>Schillo v. Kijakazi</u>, 31 F.4th 64, 74 (2d Cir. 2022) (emphasis in original), <u>citing</u> <u>Brault</u>, <u>supra</u>.

### 1.   The ALJ's Treatment of Dr. Ippolito's Opinion

Plaintiff mounts three challenges ALJ Moldafsky's treatment of Dr. Ippolito's opinion.  As an initial matter, plaintiff "notes that the ALJ appears to have applied the wrong legal standard to evaluation of the opinion evidence in this claim filed well prior to March 27, 2017" because the ALJ discusses how persuasive each opinion is in lieu of assigning weight to each opinion.  Plaintiff's Memorandum of Law [7-1] at 22.  I agree that the ALJ should have applied the former regulations to this opinion.  *See* 20 C.F.R. §§404.1527(c)(2); 416.927(c)(2).  However, to the extent that the ALJ here failed to do so, I agree with plaintiff that "the harm is the same regardless." <u>Id.</u>  Moreover, as pointed out by the Commissioner, Dr. Ippolito is a consultative examiner, not a treating physician.  Therefore, "the issue of which regulations controlled is not outcome determinative in this case".  Commissioner's Brief [9-1] at 14-15.

I address below each of plaintiff's arguments in turn.

### a.   The ALJ was not Required to Address Dr. Ippolito's Statement that Plaintiff's Psychiatric Problems May "Significantly Interfere" with Claimant's Daily Ability to Function

Plaintiff argues first that ALJ Moldafsky improperly ignored Dr. Ippolito's statement that the results of her evaluation "appear to be consistent with psychiatric problems and

this may significantly interfere with the claimant's ability to function on a daily basis".  Plaintiff's Memorandum of Law [7-1], <u>citing</u> Administrative Record [6] at 731.  She argues that this failure "is conspicuous because the AC's order upon remand explicitly found error with the ALJ's ignoring portions of Dr. Ippolito's opinion".  <u>Id.</u> at 24.  However, the prior ALJ's decision also did not discuss this statement in Dr. Ippolito's opinion ([6] at 27-28), yet the AC did not cite this statement in its Order, or instruct the ALJ to address it.  <u>Id.</u> at 850.  The AC identified, and instructed the ALJ to discuss, the "moderate" and "marked" limitations identified in Dr. Ippolito's opinion, both of which ALJ Moldafsky addressed. <u>Id.</u> at 80, 757-58.

Further, Dr. Ippolito's statement does not implicate any limitations greater than the more specific limitations included in her report.  She opined that plaintiff had mild, moderate, and marked limitations in specific functional areas.  Her general, conclusory statement does not suggest any additional limitations.  ALJ Moldafsky included significant mental limitations in the RFC finding that account for Dr. Ippolito's findings concerning mild and moderate limitations, and for the moderate limitations that ALJ Moldafsky found after considering Dr. Ippolito's opinion in the context of other evidence in the record.  *See*, *e.g.* <u>Tamara M. v. Commissioner</u>, 2021 WL 1198359, *11 (W.D.N.Y. 2021) ("Dr. Slowik's statement that plaintiff's mental impairments would interfere with her ability to function on a regular basis is not inconsistent with her conclusion that plaintiff had mild to moderate limitations in concentration, persistence, and pace; her overall assessment; or the ALJs RFC finding").  For these reasons, I find that ALJ Moldafsky did not err for failing to expressly discuss this general conclusory statement in Dr. Ippolito's report.

**b.  The ALJ Did Not Improperly Fail to Include an Off-Task Limitation**

Next, plaintiff argues that ALJ Modalfsky erred by rejecting Dr. Ippolito's opinion of marked limitations in the functional area of regulating emotions, controlling behavior, and maintaining well-being, and by failing to incorporate any off-task limitation into the RFC to account for any limitation in this functional area.  Plaintiff's Memorandum of Law [7-1] at 25.

The ability to regulate emotions, control behavior, and maintain well-being are described in paragraph B of the regulations under the heading "Adapt or Manage oneself (paragraph B4)".  20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00A.2.b.  Examples of functional abilities covered by this domain include:

> "Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions."

Id.  Further, Dr. Ippolito specifically stated in her report that plaintiff "presents as able to . . . sustain an ordinary routine and regular attendance at work; maintain hygiene and appropriate attire; and demonstrate awareness of normal hazards and taking appropriate precautions with no evidence of limitation".  Administrative Record [6] at 731.  Plaintiff does not cite any record evidence that suggests she has an off-task limitation, or that such a limitation would address any specific issues that she faces with respect to the remaining abilities covered by this functional area.  At step 3 of his analysis, ALJ Moldafsky found that plaintiff has "no more than moderate limitation[s]" in this area.  Id. at 749.  He noted that the record contains "no significant evidence

that [plaintiff] is not able to regulate her emotions, control her behavior, and maintain well-being *in a work setting*".  Id. (emphasis added).

Finally, ALJ Moldafsky appeared to properly account in the RFC for the moderate limitations he found plaintiff had in this domain.  It is well-settled that up to moderate limitations of a plaintiff's ability to regulate emotions, control behavior, and maintain well-being are "consistent with" an RFC limiting plaintiff to "simple, routine, and repetitive tasks" and "occasionally interacting with supervisors, coworkers, and the public".  Michelle K. v. Commissioner, 527 F.Supp.3d 476, 483 (W.D.N.Y. 2021).  Here, the RFC contains limitations to "simple . . . routine tasks" and "no more than incidental interaction with the general public and no more than occasional interaction with co-workers and supervisor".  Administrative Record [6] at 750.  Accordingly, the moderate limitations plaintiff has in this functional domain are adequately accounted for by the RFC.  "Ultimately it is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ".  Beaman v. Commissioner, 2020 WL 473618, *6 (W.D.N.Y. 2020).  I agree with the Commissioner that plaintiff failed to do that here.  *See* Commissioner's Brief [9-1] at 14.

### c.   The RFC Accounted for Plaintiff's Moderate Limitations in Maintaining Pace

Plaintiff's third argument is that the RFC does not properly account for the moderate limitations opined by Dr. Ippolito in the functional area of performing tasks at a consistent pace.  Plaintiff's Memorandum of Law [7-1] at 26; *see also* Administrative Record [6] at 731.  Plaintiff argues that a plaintiff must be able to "maintain concentration and attention for extended periods" of approximately 2 hour segments in order to perform any job.  Id., citing Program Operations Manual System, DI 25020.010.  She does not, however, cite any evidence

from the record that plaintiff is unable to maintain concentration for 2-hour periods of time.

Moreover, I agree with the Commissioner that the limitations in the RFC accommodate a

moderate limitation in this functional area. *See* Commissioner's Brief [9-1] at 17-18. "Contrary

to Plaintiff's argument, the ALJ included significant mental limitations in the RFC finding,

including limiting Plaintiff to simple, routine tasks - a limitation which accounts for Dr. Baskin's

findings regarding Plaintiff's [moderate] difficulties in maintaining attention and concentration,

performing complex tasks, and learning new tasks". Johnson v. Berryhill, 2018 WL 4539622, *6

(W.D.N.Y. 2018).

Because the RFC here contains similar limitations, the moderate limitations

plaintiff has in this functional domain are adequately accounted for by the RFC.  Plaintiff failed to

sustain her burden to demonstrate that a more restrictive RFC was required.  Beaman, 2020 WL

473618 at *6.

### 2.      The ALJ Did Not Mischaracterize NP Longdon's Treatment Notes

Plaintiff argues that ALJ Moldafsky improperly analyzed NP Longdon's opinion.

She specifically argues that the ALJ failed to acknowledge that NP Longdon's treatment notes

"showed numerous abnormal findings" and, therefore, the ALJ's finding that NP Longdon's

opinion was inconsistent with her treatment notes was "unsupported by the record".  Plaintiff's

Memorandum of Law [7-1] at 26.

I do not agree.  ALJ Moldafsky stated that NP Longdon's opinion that plaintiff was

"unable to meet competitive standards with no useful ability to function" in several functional

categories "seems to understate the claimant's functional capacity and is out of proportion to the

medical records as a whole".  Administrative Record [6] at 758.  The ALJ devoted nearly 2-1/2

pages of his decision to analysis of plaintiff's mental health treatment, spanning approximately 6 years.  Id. at 754-56.  He analyzed treatment notes from Ms. Longdon's visits with plaintiff along with those of other counselors at Community Concern (id. at 754, citing exhibits 3F and 8F), and mental health records from Lakeshore Behavioral Health (id., citing exhibit 10F), her primary care physician (id. at 755, citing exhibit 22F), Best Self Behavioral Health (id., citing exhibit 18F), and Williamsville Psychiatry (id., citing exhibit 19F).  Throughout this analysis, the ALJ noted both positive and negative findings.  See e.g. id. at 754 ("mood was depressed and anxious", "memory was fair", "mood was irritable and her affect was agitated at times", "[n]o deficits were noted in concentration and attention", "memory skills were intact", "insight and judgment were poor", "cooperative but irritable, agitated, anxious and depressed", "attention was poor to fair", "mildly anxious and her affect was appropriate", "thought processes were intact and reality based", "mild psychomotor agitation", "attention was good, and her memory insight and judgment were all within normal range").  He also noted that plaintiff was on different medications, and that her medications were adjusted in response to her continued symptoms, over time.  See id. at 754-56 (noting that various records discuss prescription medications, including Seroquel, Latuda, Adderall, clonidine, Prazosin, Clonazepam, and paroxetine).

Notably, these are the types of "abnormal" findings that plaintiff complains the ALJ failed to take note of with respect to NP Longdon's records.  See Plaintiff's Memorandum of Law [7-1] at 27.  On this record, ALJ Modalfsky did not err by electing to omit from the paragraph discussing NP Longdon's opinion the "abnormal" findings contained in the specific treatment notes he cited in that paragraph.  An ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony . . . It is sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision."  Miles v. Harris, 645 F.2d

122, 124 (2d Cir. 1981).  Elsewhere in his opinion, the ALJ cited to NP Longdon's treatment

notes and specifically noted "abnormal" findings of the same type and nature as those identified

by the plaintiff, and also discussed and considered other "abnormal" findings in plaintiff's

treatment records from other providers of the same type and nature as those identified by plaintiff.

ALJ Moldafsky's opinion, read as a whole, satisfies his obligation "to construct an accurate and

logical bridge between his recitation of the facts and the conclusions he reached".  Lopez obo

Y.T., 2020 WL 4504987 at *2 (internal quotation omitted).  Although there is evidence in the

record that could support different findings, "there is substantial evidence to support the ALJ's

decision.  The Commissioner, not the Court, is responsible for weighing conflicting evidence."

Pagan o/b/o Delgado v. Barnhart, 409 S.Supp.2d 217, 220 (W.D.N.Y. 2006).

   Finally, I do not agree with the plaintiff that "the ALJ did not consider the fact that

NP Longdon's opinion was substantially consistent with the marked limitations Dr. Ippolito

found".  Plaintiff's Memorandum of Law [7-1] at 28.  As discussed above, ALJ Moldafsky's

determination that plaintiff had only moderate limitations in this functional area is supported by

substantial evidence in the record.  Further, there is no requirement that an ALJ explicitly

compare the opinions to one another.  The pertinent regulation states, "[g]enerally, the more

consistent a medical opinion is *with the record as a whole*, the more weight we will give to that

medical opinion." 20 C.F.R. § 416.927(c)(4) (emphasis added).  The ALJ demonstrated that he

considered each opinion in the context of the other evidence in the record, including treatment

notes, both opinions, hearing testimony, and other filings, and determined that the marked

limitations stated in both opinions were inconsistent with that other evidence.

### 3.   The ALJ Did Not Err in His Treatment of Dr. Dave's Opinion

Plaintiff's final argument is that ALJ Moldafsky failed to incorporate into the RFC all of the limitations assessed by Dr. Dave, notwithstanding his finding that her opinion was persuasive.  Plaintiff's Memorandum of Law [7-1] at 29.  More specifically, she faults the ALJ for failing to include a limitation in the RFC that the plaintiff could stand or walk for only 2 hours at one time, and for not including a limitation that plaintiff "may have benefited from seated position with head and neck rest as needed such as a high-backed chair".  Id.  I do not agree that ALJ Moldafsky's failure to include these limitations and suggestions in the RFC was an error.

Dr. Dave opined on the check box form attached to his report that the plaintiff could stand and walk for two hours "at one time without interruption", and could perform each activity for a total of 3 to 4 hours total during the workday.  Administrative Record [6] at 721. The 2-hour limitations opined by Dr. Dave are not inconsistent with the RFC, even though the RFC does not explicitly contain a 2-hour limitation.  As plaintiff notes elsewhere in her brief in the context of discussing the functional limitation of concentration, persistence, and pace, the workday is typically broken down into "approximately 2-hour segments between arrival and first break, lunch, second break, and departure".  Plaintiff's Memorandum of Law [7-1] at 26, citing Program Operations Manual System DI 25020.010.  The plaintiff would not, therefore, be expected to stand or walk for greater than two hours at one time during the workday.

However, even if the ALJ's failure to include such a limitation in the RFC were an error, it would be harmless on this record.  The vocational expert testified that there were also sedentary jobs of sufficient numbers in the national economy that plaintiff could perform with all the other limitations in place.  See Administrative Record [6] at 760.

Finally, the ALJ did not err by failing to include in the RFC a limitation based upon Dr. Dave's comment that plaintiff "*may* benefit from seated positions with head and neck rest as needed such as a high-backed chair".  Id. at 718 (emphasis added).  "[E]quivocally suggested limitations need not be incorporated into hypotheticals to the V.E."  Slingerland v. Saul, 2020 WL 1330701, *6 (W.D.N.Y. 2020).

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [9] is granted, and plaintiff's motion [7] is denied.

 **SO ORDERED**.

Dated: March 19, 2024

/s/   Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge